UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GRACE S. ANTON, :
Individually and as Administrator of the :
estate of ELIZABETH ANN ANTON, :
Decedent, : Civil Action No.: 04-1526 (RMU)
        Plaintiff, :
 : Document No.: 3
        v. :
 :
PROSPECT CAFÉ MILANO, INC., :
T/A CAFÉ MILANO, :
        Defendant. :

## MEMORANDUM OPINION

### DENYING THE PLAINTIFF'S MOTION TO COMPEL

### I. INTRODUCTION

Early in the morning of September 7, 2003, Elizabeth Anton (represented in this action by her mother Grace Anton), a hostess at the defendant restaurant, fell from an eighth floor residential balcony to her death. Anton was intoxicated at the time of her death and was twenty years of age. The plaintiff claims that the defendant served the decedent alcohol at its restaurant, and that this action led ultimately to the decedent's death. As part of discovery in this case, the plaintiff deposed Pierre Chacra, an assistant manager at the defendant restaurant and resident of the apartment from where the decedent fell. During the deposition, Chacra, on the advice of his criminal defense lawyer, refused to answer a large number of questions, claiming protection against self-incrimination under the Fifth Amendment to the U.S. Constitution. The plaintiff has moved to compel Chacra's testimony. Because Chacra's fear of prosecution is substantial and reasonable, and because the questions posed to Chacra could incriminate him, the court denies the plaintiff's motion to compel.

## II.  BACKGROUND

### A.  Factual Background

The decedent, Elizabeth Anton, was, until the time of her death, employed as a hostess at Café Milano on Prospect Street in Georgetown, Washington, D.C.  Café Milano is owned by the defendant, Prospect Café Milano, Inc.  Compl. ¶ 10.  On September 6, 2003, the decedent worked an evening shift at Café Milano.  *Id.*  Following her shift, the plaintiff alleges that the decedent remained at the restaurant and the defendant's employees or agents served her alcoholic beverages.  *Id.* ¶¶ 11, 12.  According to the plaintiff, the defendant's employees had actual knowledge that the decedent was under 21 years old.  *Id.* ¶ 13.  The plaintiff claims that the practice of serving alcohol to underage employees was common at the defendant restaurant.  *Id.* ¶ 14.

At approximately 2:00 a.m. on September 7, 2003, the decedent and assistant manager Pierre Chacra departed the restaurant for Chacra's residence at 1200 N. Veitch St., in Arlington, Virginia.  *Id.* ¶ 15.  At 2:33 a.m., Chacra called 911 to inform them that the decedent had fallen from his balcony.  *Id.* ¶ 18.  The injuries sustained by Anton proved fatal.  *Id.* ¶ 19.

### B.  Procedural Background

On September 2, 2004, the decedent's mother, Grace Anton, filed a lawsuit in this court as the administrator of her daughter's estate against the defendant restaurant claiming that the restaurant's negligence in serving alcohol to the decedent was a proximate cause of her death.  *See* Compl.  She seeks twenty million dollars in compensatory damages plus interest and costs.  *Id.*  As part of the plaintiff's pursuit of discovery material, the plaintiff deposed Chacra on September 21, 2005.  Pl.'s Mot. at 2.  Chacra appeared at the deposition with his criminal

attorney, who, for virtually every question asked by the plaintiff's attorney, advised his client to assert his Fifth Amendment privilege against self-incrimination. *Id.* at 3.

The plaintiff filed a motion to compel on October 17, 2005, disputing Chacra's assertion of his Fifth Amendment privilege in the circumstances presented in this case. Pl.'s Mot. at 9. Pursuant the court's Civil Standing Order, the parties in all civil lawsuits must contact chambers prior to filing any discovery motion. Standing Order ¶ 9. Because the plaintiff failed to follow the court's direction, the court denied the plaintiff's motion without prejudice. On November 3, 2005, after contacting chambers and thus complying with the court's Civil Standing Order, the plaintiff filed its motion to compel. On December 20, 2005, non-party Chacra filed a pleading indicating his position regarding the plaintiff's motion to compel. *Anton v. Prospect Café Milano*, Civ. 04-1526, Dkt.#. 14 ("Chacra's Position"). By way of minute order, the court directed the plaintiff to file a responsive pleading, Minute Ord. (Jan. 11, 2006), and on January 31, 2006, the plaintiff responded, Pl.'s Reply. The court now turns to the plaintiff's motion to compel.

### III.   ANALYSIS

#### A.   Legal Standard for a Motion to Compel

Rule 26(b)(1) authorizes discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). The term "relevance" is broadly construed, and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997); *see also*

*Smith v. Schlesinger,* 513 F.2d 462, 473 n. 37 (D.C. Cir. 1975) (noting that "a party may discover information which is not admissible at trial if such information will have some probable effect on the organization and presentation of the moving party's case"). Put another way, "[a] showing of relevance can be viewed as a showing of need[, as] for the purpose of prosecuting or defending a specific pending civil action, one is presumed to have no need of a matter not relevant to the subject matter involved in the pending action." *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984). That said, relevancy does not encompass discovery of information with "no conceivable bearing on the case." *Id*. (citing 8 Fed. Prac. & Proc. 2d § 2008). A trial court enjoys considerable discretion over discovery matters. *Id.*; *United States v. Krizek*, 192 F.3d 1024, 1029 (D.C. Cir. 1999).

### B.     Legal Standard for Fifth Amendment Assertion

The Fifth Amendment "protects a person . . . against being incriminated by his own compelled, testimonial communications." The Fifth Amendment applies in any proceeding to "disclosures which the witness reasonably believes could be used [against him or her] in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States,* 406 U.S. 441, 444-45 (1972).

In addition to a criminal trial, the Fifth Amendment "privileges [a defendant] not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984).

A district court must review assertions of privilege on a question-by-question basis. *U.S. v. Argomaniz*, 925 F.2d 1349, 1355 (11th Cir. 1991). In *Argomaniz*, the court conducted a

hearing *in camera* wherein Argomaniz was given the opportunity to substantiate his claims of the privilege and the district court was able to consider the questions asked and the documents requested by the summons.  *Id.*  A witness may not testify as to the broad outlines of a matter and then assert a privilege as to the particulars.  *Rogers v. United States*, 340 U.S. 367, 373 (1951).

The judge's inquiry into the scope of the privilege is limited by the Fifth Amendment and the judge may not force a witness to prove incrimination by testimony.  *United States v. Reese*, 561 F.2d 894, 900 (D.C. Cir. 1977).  To sustain invocation of the Fifth Amendment privilege, the judge must determine only whether there is a reasonable basis for believing a danger to the witness might exist in answering a particular question.  *Id*.  Further, the judge "may appraise a claim of privilege in light of his personal perception of the peculiarities of the case and should not be overruled unless it is perfectly clear that the witness is mistaken and that the answers cannot possibly incriminate."  *Hoffman v. United States*, 341 U.S. 479, 487-88 (1951).  The privilege extends not only to answers which would in and of themselves support a criminal conviction, but also to answers which would furnish a link in the chain of evidence needed to prosecute.  *Id.* at 486.

In unusual cases, a district judge may sustain a blanket assertion of the Fifth Amendment privilege after determining that there is a reasonable basis for believing a danger to the witness might exist in answering any relevant question.  *United States v. Ortiz*, 82 F.3d 1066, 1073 (D.C. Cir. 1996).  If a party requests, a court should inquire as to whether the witness was entitled to assert a blanket privilege.  *Id.*  The witness must have a good faith belief that testimony would be self-incriminating.  *U.S. v. Vavages*, 151 F.3d 1185, 1192 (9th Cir. 1998).

### C.   Chacra Properly Invoked the Fifth Amendment

The plaintiff argues that Chacra's invocation of the Fifth Amendment was improper because he invoked it to cover almost every question posed to him in the course of his deposition.  Pl.'s Mot. at 3.  The plaintiff claims that because Chacra previously cooperated with Arlington County investigators, including providing a recorded statement, Chacra has effectively waived his Fifth Amendment privilege.  *Id.* at 11 (citing *SEC v. Parksburg Wireless, LLC*, 156 F.R.D. 529, 535 (D.D.C. 1994)).  Lastly, the plaintiff argues that because there is no immediate criminal prosecution or threat of one, Chacra's invocation of the Fifth Amendment is improper.  *Id.*

Chacra asserts that he invoked his Fifth Amendment right against self-incrimination because of the threat that his testimony could be used against him in a criminal prosecution.  Chacra's Position ¶ 6.  Chacra's fear of self-incrimination stems from his belief that both the plaintiff and the defendant in this civil wrongful death action have an interest in establishing that Chacra's actions were a proximate cause of the plaintiff's death.  *Id.*

Because Chacra's fear of prosecution is substantial and real, and because the scope of inquiry at Chacra's deposition covered matters that could furnish a link in the chain of evidence needed to prosecute Chacra, the court denies the plaintiff's motion to compel.  In the course of its investigation into the decedent's death, Arlington County investigators interviewed Chacra.  Pl.'s Mot. at 11.  The plaintiff argues that because investigators have not filed criminal charges against Chacra, his fear of prosecution is fanciful and not reasonable.  *Id.*  Yet it is precisely because Chacra was under investigation that his fear of prosecution is not "fanciful."  *In Re Corrugated Container Antitrust Litig.*, 662 F.2d at 884-85 (holding that a Fifth Amendment assertion was

6

proper because there was no "guarantee . . . that a criminal action would not be started"); *see also Duffy v. Currier*, 291 F. Supp. 810 (D. Minn. 1968) (stating that "[i]n view of the fact that there was a death in this case . . . the court cannot say that there was no danger of self-incrimination"). In the present case, though no criminal charges have yet been brought, the plaintiff has not demonstrated that charges could not be brought as a matter of law (for example, because of a statute of limitations bar). *In Re Corrugated Container Antitrust Litig.*, 662 F.2d at 885-86; *In Re Master Key Litig.*, 507 F.2d 292, 293 (9th Cir. 1974) (ruling that "the right to assert one's privilege against self-incrimination does not depend upon the likelihood, but upon the possibility of prosecution"). Because a criminal prosecution against Chacra is possible, his fear of prosecution is reasonable. *In Re Corrugated Container Antitrust Litigation*, 662 F.2d at 885-86.

Having ruled that Chacra's fear of prosecution is reasonable, the court must now determine whether the questions asked of him are likely to "furnish a link in the chain of evidence." *Hoffman*, 341 U.S. at 486. The plaintiff argues that Chacra's Fifth Amendment assertion is overly broad – that it includes questions that could not incriminate him. Pl.'s Reply at 2. For example, the plaintiff asserts that answers to questions related to Chacra's employment at Café Milano, questions relating to the manner in which Café Milano operated its business, and questions relating to Chacra's relationship with Anton will not incriminate Chacra. Pl.'s Reply at 2. The court cannot agree because the scope of all of the questions asked by the plaintiff's attorney concern Chacra's involvement with, connection to, and knowledge of defendant Café Milano and the decedent. Indeed, the subject matter of the civil lawsuit, the alleged wrongful death of Elizabeth Anton, is precisely the event from which Chacra is potentially exposed to criminal liability. Though some of the questions asked of Chacra appear to be fairly innocuous,

they nonetheless may "harbor hidden dangers for the unwary witness." *In Re Corrugated Container Antitrust Litig.*, 662 F.2d at 884 (ruling that facially innocuous questions concerning possession of documents nonetheless harbor risks).  For example, questions regarding Chacra's relationship with the decedent are potentially incriminating in that they could lead Chacra to divulge motive – related information.  The mere potential of incrimination is sufficient to justify Chacra's invocation of the Fifth Amendment privilege.  *Id.* (holding that "seemingly innocent questions also harbor[] hidden dangers for the unwary witness").

Chacra's counsel advised him not to answer general questions regarding his employment at Café Milano and the manner in which the restaurant operates its business.  Pl.'s Mot., Ex. 1.  Though the prospect of incriminating testimony flowing from these questions is certainly more remote than questions regarding Chacra's relationship to the decedent, the court upholds Chacra's assertion of the Fifth Amendment for these questions for two reasons.  First, any information revealed by Chacra concerning his relationship with Café Milano and their business practices could "furnish a link in the chain of evidence" in demonstrating Chacra's knowledge of, participation in, or complacency with wrongdoing on Café Milano's part.  *Hoffman*, 341 U.S. at 486 (holding that the Fifth Amendment must be "accorded liberal construction in favor of the right it was intended to secure [to embrace that which] would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime").  These possibilities alone make Chacra's assertion of the privilege against self-incrimination proper.  *In Re Corrugated Container Antitrust Litig.*, 662 F.2d at 884-885.  Second, the information the plaintiff seeks concerning Chacra's length of employment with Café Milano and information pertaining to Café Milano's business operations is likely available through the traditional discovery process from

the defendant, Café Milano.  The court rules that Chacra's right to not self-incriminate outweighs the plaintiff's need in securing this information from him, particularly because the information is likely otherwise available.  *In Re Sealed Case (Medical Records)*, 381 F.3d 1205, 1215 (D.C. Cir. 2004) (holding that Rule 26 "vests the trial judge with broad discretion to tailor discovery narrowly") (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)); *Cusumano v. Microsoft Corp.*, 62 F.3d 708, 716 (1st Cir. 1998) (deferring to the district court's determination that a litigant's need for information was lessened because the same information was otherwise available).

## IV.   CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion to compel.  An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 27th day of February, 2006.

RICARDO M. URBINA  
United States District Judge