# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

GRACE S. ANTON,                :
Individually and as Administrator of the  :
estate of ELIZABETH ANN ANTON,  :
Decedent,                   :
                        :     Civil Action No.:    04-1526 (RMU)
           Plaintiff,     :
                        :     Document No.:    20
           v.            :
                        :
PROSPECT CAFÉ MILANO, INC.,    :
T/A CAFÉ MILANO,          :
                        :
          Defendant.    :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

Early in the morning of September 7, 2003, Elizabeth Anton (represented in this action by
her mother, Grace Anton), a hostess at the defendant restaurant, fell from an eighth floor
residential balcony to her death.  Anton was intoxicated at the time of her death and was twenty
years of age.  The plaintiff claims that the defendant served the decedent alcohol at its restaurant
and that this action led ultimately to the decedent's death.  The defendant now moves for
summary judgment, arguing that doctrines of assumption of the risk and contributory negligence
bar the plaintiff's suit and that the plaintiff lacks adequate evidence to prove its prima facie case.
Because the plaintiff concedes dismissal of Count II, brought under the Virginia Survival Statute,
and concedes dismissal of Count III, brought under the District of Columbia Wrongful Death
Act, the court grants summary judgment as to those claims.  Because assumption of the risk and

contributory negligence are factual matters upon which reasonable jurors could disagree, and

because the sufficiency of the evidence is ample to survive summary judgment, the court denies

summary judgment as to Count I and Count IV of the plaintiff's complaint.


## II.   BACKGROUND

### A.   Factual Background

The decedent, Elizabeth Anton, was, until the time of her death, employed as a hostess at

Café Milano on Prospect Street in Georgetown, Washington, D.C.  Café Milano is owned by the

defendant, Prospect Café Milano, Inc.  Compl. ¶ 10.  On September 6, 2003, the decedent

worked an evening shift at Café Milano.  *Id.*  Following her shift, the plaintiff alleges that the

decedent remained at the restaurant and the defendant's employees or agents served her alcoholic

beverages.  *Id.* ¶¶ 11, 12.  According to the plaintiff, the defendant's employees had actual

knowledge that the decedent was under 21 years old.  *Id.* ¶ 13.  The plaintiff claims that the

practice of serving alcohol to underage employees was common at the defendant restaurant.  *Id.* ¶

14.

At approximately 2:00 a.m. on September 7, 2003, the decedent and assistant manager

Pierre Chacra departed the restaurant for Chacra's residence at 1200 N. Veitch St., in Arlington,

Virginia.  *Id.* ¶ 15.  At 2:33 a.m., Chacra called 911 to inform them that the decedent had fallen

from his balcony.  *Id.* ¶ 18.  The injuries sustained by Anton proved fatal.  *Id.* ¶ 19.

### B.   Procedural Background

On September 2, 2004, the decedent's mother, Grace Anton, filed a lawsuit in this court as the administrator of her daughter's estate against the defendant restaurant claiming that the restaurant's negligence in serving alcohol to the decedent was a proximate cause of her death. *See* Compl.  She seeks twenty million dollars in compensatory damages plus interest and costs. *Id.*  As part of the plaintiff's pursuit of discovery material, the plaintiff deposed Chacra on September 21, 2005.  Pl.'s Mot. at 2.  Chacra appeared at the deposition with his criminal attorney, who, for virtually every question asked by the plaintiff's attorney, advised his client to assert his Fifth Amendment privilege against self-incrimination.  *Id.* at 3.

On February 27, 2006, the court issued a memorandum opinion denying the plaintiff's motion to compel Chacra's testimony.  Mem. Op. (Feb. 27, 2006).  Specifically, the court ruled that Chacra had appropriately invoked his Fifth Amendment privilege in refusing to answer questions regarding the events immediately preceding the decedent's death.  *Id.*

Following a period of discovery, the defendant now moves for summary judgment.  The defendant supports its motion on several fronts.  First, the defendant contends that due to Chacra's refusal to testify, the plaintiff lacks sufficient evidentiary support for its theory of the case and will be unable, as a matter of law, to demonstrate to the jury that the defendant's actions constituted the proximate cause of the plaintiff's death.  Def.'s Mot. at 6-10.  Second, as to Count I, which is brought under Virginia's wrongful death statute, the defendant argues that doctrines of assumption of the risk and contributory negligence bar the plaintiff's claim.  The court turns now to the defendant's motion.

### III.   ANALYSIS

#### A.   Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150,

154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable

a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely

colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477

U.S. at 249-50 (internal citations omitted).

## B.   The Court Denies the Defendant's Motion for Summary Judgment as to Claims I and IV

### 1.   The Defendant Fails to Demonstrate that the Plaintiff Cannot Prove Causation

The defendant argues that the plaintiff will be unable to prove causation at trial. Def.'s

Mot. at 6. In support of this assertion, the defendant notes that Chacra has lawfully asserted his

Fifth Amendment privilege against self-incrimination. *Id.* Furthermore, according to a

declaration appended to the defendant's reply in support of its motion for summary judgment,

Chacra will continue to "assert [his] Fifth Amendment right [as to all] facts concerning Elizabeth

Ann Anton and her death." Def.'s Reply, Ex. 1 ¶ 7. The defendant also maintains that

statements made by Chacra to the police in a 911 call and immediately following Anton's death

constitute inadmissible hearsay. *Id.* In other words, the defendant argues that the plaintiff cannot

prove causation absent Chacra's testimony or police statements. *Id.* at 8. The defendant is

incorrect.

Assuming that Chacra's police statements are inadmissible hearsay[1], the plaintiff's

remaining arsenal of evidence consists of police incident reports detailing police officers'

---

[1]        Because summary judgment is inappropriate even assuming the court precludes Chacra's police statements from trial, the court need not render such an evidentiary ruling for the disposition of the instant summary judgment motion. The court will consider these matters if and when the defendant moves to exclude the statements at a later stage in the litigation.

5

observations and conclusions after surveying Chacra's apartment and the location of the decedent's death,[2] Pl.'s Opp'n, Exs. 2, 6-8, an affidavit from Dr. Alphonse Pokis detailing his observations and conclusions regarding the decedent's intoxication and likely resultant mental impairments, *id.* Ex. 4, a garage access record from Chacra's apartment building on the night of the death, *id.* Ex. 5, and a deposition of Adam Brunelle, presumably an employee at the defendant restaurant, detailing events preceding the decedent's leaving the restaurant on the night of her death, *id.* Ex. 9.  With regard to the cause of Anton's death, Dr. Poklis concluded that the decedent's intoxication "proximately affected Elizabeth Anton's initial decision making process in attempting to sit on the railing from which she fell and, further, while attempting to sit on the raising, these impairments caused by her intoxication would have directly and proximately affected her ability to properly coordinate, balance and sit on the railing from which she fell." *Id.* Ex. 4, ¶ 12.  Strictly speaking, Dr. Poklis's affidavit does not indicate any conclusion that Anton's intoxication proximately caused Anton's death, but only that her intoxication "affected . . . her decision making process" and "affected her ability to properly coordinate." *Id.*  A reasonable person could conclude that the doctor's testimony does not demonstrate proximate causation between the defendant's actions and the decedent's fall.  In other words, to find proximate causation, a reasonable person would have to infer that her intoxication not only "affected . . . her decision making process," and "affected" her coordination, as Dr. Poklis suggests, but that her intoxication caused her to fall which was the proximate cause of her death.

---

[2]     Though the police officers' reports include statements regarding conversations with Chacra, the court for the time assumes inadmissibility and ignores those portions of the records.

Nevertheless, however, at the summary judgment stage the court construes all reasonable inferences in the plaintiff's favor. *Anderson*, 477 U.S. at 255. Applied to this case, the court presumes that a reasonable fact finder could infer causation from the statements made by Dr. Poklis. And recognizing that the defendant, as the moving party, carries the burden of proof, *Celotex*, 477 U.S. at 322, the court notes that the defendant's motion and reply brief are conspicuously devoid of any argument challenging the appropriateness, relevance or probative nature of Dr. Poklis's affidavit vis-a-vis causation. Accordingly, the plaintiff's evidence is sufficient to survive summary judgment.

### 2.   Contributory Negligence and Assumption of the Risk are Fact Issues for a Jury

The defendant argues that the Virginia legal doctrines of contributory negligence and assumption of the risk preclude recovery. Def.'s Mot. at 10-13. To the defendant, because the plaintiff asserts the Virginia Wrongful Death Statute as its first cause of action, the substantive law of that state must apply. *Id.* at 10. The plaintiff maintains that the substantive law of the District of Columbia (save for the actual Virginia statute invoked) must apply. Pl.'s Opp'n at 15. The plaintiff would have the court piece together a substantive legal regime and apply D.C. law to a Virginia statute solely because the plaintiff has concluded that "Virginia policy would not be advanced through the application of that state's laws to that state's statutes. *Id.* at 17.

Though the court is not prepared to reject the plaintiff's suggestion outright, the court maintains reservations as to the application of D.C. law to a Virginia statute. This reservation is particularly acute given Virginia's interest in the proper application of its laws (which the plaintiff ignores in its rejection of any Virginia policy interest in this case) and the lack of relevant analysis by the plaintiff to the contrary. The court need not issue a ruling on this issue at

the present time, however, because even assuming the applicability of those doctrines, they do

not warrant summary judgment.[3]

For both contributory negligence and assumption of the risk, the court will defer to a

jury's conclusion, absent evidence so clear that no reasonable juror could conclude otherwise.

*Hot Shot Express, Inc. v. Brooks*, 264 Va. 126, 135 (2002) (holding that "[o]rdinarily, whether a

plaintiff is guilty of contributory negligence is a jury issue.  The issue becomes one of law for

resolution by the trial court only when reasonable minds could not differ about the conclusion

from the evidence"); *Thurmond v. Prince William Basketball Club*, 265 Va. 59, 64 (2003).  In the

present case, the defendant has not adequately demonstrated that the plaintiff's negligence

contributed to her fall sufficient for the court to deprive a jury of the opportunity to come to this

decision on its own.  Though perhaps not likely, a reasonable jury might conclude that the

decedent's *intoxication* was the sole cause of her decision to scale the railing, which ultimately

led to her demise.  If so, the jury could conclude that the decedent was not contributorily

negligent.  Likewise with assumption of the risk, a reasonable jury could, in theory, conclude that

the doctrine does not bar liability because the decedent's intoxication prevented her from

appreciating the danger of the action she ultimately undertook.  For both doctrines, the

defendant's burden at the summary judgment stage is far higher than at trial, for it must convince

the court not only of the efficacy of those defenses, but that no reasonable jury could conclude

otherwise.  *Hot Shot Express, Inc.*, 264 Va. at 135; *Thurmond*, 265 Va. at 64.

---

[3]     As with the defendant's suggestion that the court should exclude Chacra's testimony, the court will decide whether contributory negligence and assumption of the risk defenses apply in the current case at a later stage in this litigation upon motion.  And if called upon to consider the matter, the court expects the parties' briefing to be befitting of pleadings in a federal court (*i.e.*, substantially different from that presented thus far).

## IV.    CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's

motion for summary judgment.  An order directing the parties in a manner consistent with this

Memorandum Opinion is separately and contemporaneously issued this 5th day of February,

2007.

RICARDO M. URBINA
United States District Judge
